# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CLAYTON BYRD in his official capacity as Executive Director of the TENNESSEE ALCOHOLIC BEVERAGE COMMISSION, *et al.*, <br><br> Plaintiffs, <br><br> V. <br><br> TENNESSEE WINE AND SPIRITS RETAILERS ASSOCIATION, <br><br> Defendant. | Case No. 3:16-cv-02738 <br> Judge Sharp |

## MEMORANDUM

Pending before the Court is Plaintiff[1] Tennessee Fine Wines and Spirits, LLC's (d/b/a Total Wine Spirits Beer & More) ("Tennessee Fine Wines") Motion for Partial Summary Judgment, (Docket No. 55), to which Plaintiff Clayton Byrd ("Byrd") and Defendant Tennessee Wine and Spirits Retailers Association ("Association") have filed Responses in Opposition, (Docket Nos. 73, 90), and Plaintiff Tennessee Fine Wines has replied, (Docket Nos. 76, 95). For the reasons set forth below, the Court will grant Plaintiff Tennessee Fine Wines' Motion.

## BACKGROUND

The relevant facts are undisputed for present purposes and are as follows:

Plaintiff Byrd is the Executive Director of the Tennessee Alcoholic Beverage Commission ("the Commission"), a Tennessee state agency tasked with licensing the sale and delivery of alcoholic beverages. Plaintiff Byrd filed this action seeking a declaratory judgment

---

[1] The parties in this suit are labeled as either plaintiff or defendant pursuant to this Court's Order realigning the parties. (Docket No. 53 at 1, ¶ 2).

1

regarding the constitutionality of the residency requirement for issuing a retail license outlined in Tenn. Code Ann. § 57-3-204(b)(2)(A). (Docket No. 1-1). Plaintiff Tennessee Fine Wines is a Tennessee limited liability company whose members are not residents of Tennessee. It seeks to own and operate one or more retail liquor stores, referred to as retail package stores, in Tennessee.

On July 5, 2016, Plaintiff Tennessee Fine Wines filed an application with the Commission for a new retail package store to be located in Nashville, Tennessee. Plaintiff Tennessee Fine Wines asserts that its representatives met with the Commission's staff, including Plaintiff Byrd, to discuss its plan to apply for a retail package store license prior to filing its application. It further asserts that those discussions included whether the residency requirements would preclude it from obtaining a license. Plaintiff Byrd disputes having met with representatives of Tennessee Fine Wines prior to the submission of its application. The Commission's staff advised Plaintiff Tennessee Fine Wines that, in light of two opinions by the Tennessee Attorney General that the residency requirements are unconstitutional, the Commission has not enforced the residency requirements and has licensed nonresidents in the past. The Commission's staff recommended that the Commission approve Plaintiff Tennessee Fine Wines' application, subject to certain conditions. The Commission twice deferred its vote on Plaintiff Tennessee Fine Wines' application for a retail package store license, the last time being indefinitely until the Court resolves Plaintiff Byrd's declaratory action.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, this Court is required to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff

Tennessee Fine Wines' Motion for Partial Summary Judgment presents pure issues of law, which are appropriate for resolution at the summary judgment stage.

## LEGAL ANALYSIS

The Commission issues retail package store licenses pursuant to Tenn. Code Ann. § 57-3-204 and other statutory provisions. Tenn. Code Ann. § 57-3-204 contains residency requirements that prohibit the Commission from issuing retail package store licenses to nonresidents. Specifically, when it comes to issuing a license to an individual, the statute provides in pertinent part that:

> No retail license under this section may be issued to any individual: Who has not been a bona fide resident of this state during the two-year period immediately preceding the date upon which application is made to the commission or, with respect to renewal of any license issued pursuant to this section, who has not at any time been a resident of this state for at least ten (10) consecutive years[.]

T.C.A. § 57-3-204(b)(2)(A). Furthermore, with respect to corporations, the statute states, *inter alia*, that:

> The commission may, in its discretion, issue such a retail license to a corporation; provided, that no such license shall be issued to any corporation unless such corporation meets the following requirements:
>
> (A) No retail license shall be issued to any corporation if any officer, director or stockholder owning any capital stock in the corporation, would be ineligible to receive a retailer's license for any reason specified in subdivision (b)(2), if application for such retail license had been made by the officer, director or stockholder in their individual capacity;
>
> (B) All of its capital stock must be owned by individuals who are residents of this state and either have been residents of the state for the two (2) years immediately preceding the date application is made to the commission or, with respect to renewal of any license issued pursuant to this section, who has at any time been a resident of this state for at least ten (10) consecutive years;

T.C.A. § 57-3-204(b)(3)(A)-(B).

Plaintiff Tennessee Fine Wines argues that the residency requirements are unconstitutional because they violate the Commerce Clause as well as the Privileges and Immunities Clause of the United States Constitution. Because the relevant facts are undisputed, this case presents a strictly legal question as to whether Plaintiff Tennessee Fine Wines is entitled to summary judgment as a matter of law. It is.

I. **Commerce Clause**

The Commerce Clause of the U.S. Constitution both expressly grants Congress the power to regulate commerce among the several States, see U.S. Const. art. I, § 8, cl. 3, and implicitly limits the States' power to discriminate against interstate commerce. See, e.g., New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273 (1988). The Commerce Clause's negative implication—also known as the dormant Commerce Clause—arises from a concern over "economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." Jelovsek v. Bredesen, 545 F.3d 431, 435 (6th Cir. 2008) (citing New Energy, 486 U.S. at 273-74). "[I]n all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" Granholm v. Heald, 544 U.S. 460, 472 (2005) (citing Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or., 511 U.S. 93, 99 (1994)).

Dormant Commerce Clause challenges proceed under a two-tiered analysis. Int'l Dairy Foods Ass'n v. Boggs, 622 F.3d 628, 644 (6th Cir. 2010). Under the first tier, a court determines whether "a state statute directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests." Am. Beverage Ass'n v. Snyder, 735 F.3d 362, 369–70 (6th Cir. 2013) (internal quotation marks and

citation omitted). To prevail, a plaintiff must satisfy its burden of showing that a state regulation discriminates against out-of-state interests either "(a) facially, (b) purposefully, or (c) in practical effect." Id. at 370 (internal quotation marks and citations omitted). "If the plaintiff satisfies its burden, then 'a discriminatory law is virtually *per se* invalid and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" Id. (citation omitted). Under the second tier, if the challenged state regulation is neither extraterritorial nor discriminatory, then a court applies the Supreme Court's balancing test set forth in Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). Id. Under Pike, a court should uphold the challenged state regulation "unless the burden it imposes upon interstate commerce is 'clearly excessive in relation to the putative local benefits.'" Id. (internal quotation marks and citation omitted).

### A. The residency requirements are facially discriminatory

Plaintiff Tennessee Fine Wines argues that the residency requirements are discriminatory on their face. For support, it relies on Jelovsek v. Bredesen, 545 F.3d 431 (6th Cir. 2008). In that case, the Sixth Circuit vacated the district court's finding as to certain Tennessee laws concerning the wine industry. Jelovsek, 545 F.3d at 433. The Sixth Circuit held certain provisions of Tennessee's Grape and Wine Law to be "discriminatory on their face," "impermissibly favor[ing] Tennessee interests at the expense of interstate commerce." Id. Among those provisions was Tenn. Code Ann. § 57-3-207(d), which provided:

> No winery license shall be issued except to individuals *who are residents of the state of Tennessee and have been for at least two (2) years next preceding residents of the state*, . . . . A winery license may, in the discretion of the commission, be issued to a corporation *only if all of the capital stock of such corporation is owned by individuals who have been residents of Tennessee for not less than two (2) years preceding* . . . .

T.C.A. § 57-3-207(d) (2008) (emphasis added). Plaintiff Tennessee Fine Wines argues that, because the residency requirements for a retail package store license are nearly identical to the residency requirements for a winery license invalidated in Jelovsek, they are facially discriminatory and *per se* invalid unless they advance a legitimate local purpose not adequately served by reasonable nondiscriminatory alternatives. Plaintiff Byrd and Defendant Association, however, argue that the state of Tennessee, pursuant to the Twenty-first Amendment, may impose such residency requirements.

Section 2 of the Twenty-first Amendment states that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2. However, it is axiomatic that even though the States have the right to regulate alcoholic beverages within their borders, that right is not plenary. See Jelovsek, 545 F.3d at 436 (citing Granholm, 544 U.S. at 484) ("'[T]he aim of the Twenty-first Amendment was to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use. The Amendment did not give States the authority to pass nonuniform laws in order to discriminate against out-of-state goods . . . ."); Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 276 (1984) (finding a state's liquor tax exemption for certain locally produced products violative of the Commerce Clause and stating that "[t]he central purpose of [Section 2 of the Twenty-first Amendment] was not to empower States to favor local liquor industries by erecting barriers to competition."). Because "state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause," Granholm, 544 U.S. at 487, the Court is tasked with determining whether the residency requirements at issue run afoul of the Commerce Clause or are saved by the Twenty-first Amendment.

Plaintiff Byrd and Defendant Association contend that Tennessee's residency requirements for those seeking a retail package store license are protected under the Twenty-first Amendment because the residency requirements are simply part of the retail tier of Tennessee's three-tier regulatory scheme governing who may sell liquor within its borders.[2] (Docket No. 73 at 10; Docket No. 90 at 11-13). They rely on Granholm v. Heald, 544 U.S. 460 (2005) for support.

In Granholm, the Supreme Court invalidated—on Commerce Clause grounds—laws in New York and Michigan that permitted in-state wineries, but restricted the ability of out-of-state wineries, to ship alcohol directly to consumers. In rejecting those States' argument that striking down their direct-shipment laws "would call into question the constitutionality of the three-tier system," the Court offered dicta[3] that Plaintiff Byrd and Defendant Association find particularly meaningful. Granholm, 544 U.S. at 488. It stated, "'The Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system.'" Id. (quoting California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc., 445 U.S. 97, 110 (1980)). The Court further observed that "[it has] previously recognized that the three-tier system itself is 'unquestionably legitimate.'" Id. at 489 (citing North Dakota v. United States, 495 U.S. 423, 432 (1990)). The Supreme Court then stated that "[s]tate policies are protected under the Twenty-first Amendment when they treat

---

[2] Tennessee's three-tier alcohol distribution system consists of (1) manufacturers, who sell to (2) licensed distributors/ wholesalers, who in turn sell to (3) licensed retailers, who in turn sell to consumers.

[3] The Court recognizes Defendant Association's argument that this Court still needs to follow Supreme Court dicta. See Am. Civil Liberties Union of Kentucky v. McCreary Cty., Ky., 607 F.3d 439, 447 (6th Cir. 2010) ("Lower courts are 'obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale.'") (citation omitted). However, the Court disagrees with Plaintiff Byrd's and Defendant Association's interpretation of the relevant dicta.

liquor produced out of state the same as its domestic equivalent. The instant cases, in contrast, involve straightforward attempts to discriminate in favor of local producers." Id. The Court ultimately held that "[t]he differential treatment between in-state and out-of-state wineries constitutes explicit discrimination against interstate commerce." Id. at 467.

Therefore, Plaintiff Byrd and Defendant Association argue that Granholm stands for the proposition that "as long as a state statute does not discriminate against nonresident *liquor producers or products* with its three-tier system, the statute is protected from Commerce Clause challenges." (Docket No. 73 at 7) (emphasis added); (see Docket No. 90 at 11-13). Under those circumstances, they argue "the Commerce Clause is not implicated and no balancing under Commerce Clause jurisprudence is necessary" and "nothing in Granholm stands as a limitation on the State's powers under the Twenty-first Amendment." (Docket No. 73 at 11; Docket No. 90 at 13). The way in which other courts have interpreted Granholm supports Plaintiff Byrd's and Defendant Association's position.

In Arnold's Wines, Inc. v. Boyle, 571 F.3d 185 (2d Cir. 2009), the Second Circuit upheld, against a Commerce Clause challenge, a New York statutory provision that permitted New York-licensed retailers, but not out-of-state retailers, to deliver liquor directly to New York residents. The Second Circuit stated, "Granholm validates evenhanded state policies regulating the importation and distribution of alcoholic beverages under the Twenty-first Amendment." Arnold's Wines, 571 F.3d at 190. It continued, "It is only where states create discriminatory exceptions to the three-tier system, allowing in-state, but not out-of-state, liquor to bypass the three regulatory tiers, that their laws are subject to invalidation based on the Commerce Clause." Id. (citing Granholm, 544 U.S. at 489 and Brooks v. Vassar, 462 F.3d 341, 351-53 (4th Cir. 2006)).

8

Applying its understanding of Granholm to the New York law, the Second Circuit stated that the challenged provisions did not distinguish between liquor produced out of state and liquor produced in New York because licensed in-state retailers could ship both kinds directly to New York consumers. Id. Because the law "treat[ed] in-state and out-of-state liquor evenhandedly under the state's three-tier system[, requiring both to pass through it], . . . [it] complie[d] with Granholm's nondiscrimination principle." Id. The Second Circuit also stated that the challenge to the provisions "requiring all wholesalers and retailers be present in and licensed by the state . . . is a frontal attack on the constitutionality of the three-tier system itself[,]" which is "directly foreclosed by the Granholm Court's express affirmation of the legality of the three-tier system." Id. at 190-91; see Brooks, 462 F.3d at 352 (stating that "an argument that compares the status of an in-state retailer with an out-of-state retailer—or that compares the status of any other in-state entity under the three-tier system with its out-of-state counterpart—is nothing different than an argument challenging the three-tier system itself."). Having concluded that New York's three-tier system did not discriminate against out-of-state producers or products, the Second Circuit declined to analyze the challenged law further under the Commerce Clause. Arnold's Wines, 571 F.3d at 191.

In Southern Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control, 731 F.3d 799 (8th Cir. 2013), the Eighth Circuit held that Missouri's residency requirement to obtain a wholesale liquor license was permissible under the Twenty-first Amendment and the dormant Commerce Clause. There, the Eighth Circuit stated that Granholm "drew a bright line between the producer tier and the rest of the system," and endorsed the Second Circuit's approach in Arnold's Wines of not analyzing further, under Commerce Clause principles, a state regulation

9

that does not discriminate against liquor products or producers from out-of-state.[4]  Southern Wine, 731 F.3d at 810.  It characterized Granholm's guidance as follows: "The three-tier system is 'unquestionably legitimate,' . . . and that system includes the 'licensed in-state wholesaler.'"  Id. at 809 (citing Granholm, 544 U.S. at 489 (quoting North Dakota, 495 U.S. at 432, 447 (Scalia, J., concurring in the judgment) ("The Twenty-first Amendment . . . empowers North Dakota to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler."))).

Applying its view of Granholm to the wholesaler residency requirement, the Eighth Circuit determined that it was not discriminatory towards out-of-state liquor producers or products.  Id. at 810.  The Eighth Circuit stated that the residency requirement merely defined "the extent of in-state presence required to qualify as a wholesaler in the three-tier system."  Id. at 809-10.  It further reasoned:

> If it is beyond question that States may require wholesalers to be "in-state" without running afoul of the Commerce Clause, Granholm, 544 U.S. at 489, 125 S.Ct. 1885 (internal quotation omitted), then we think States have flexibility to define the requisite degree of "in-state" presence to include the in-state residence of wholesalers' directors and officers, and a super-majority of their shareholders.

Id. at 810.

Notwithstanding Arnold's Wines and Southern Wine, the Court agrees with Plaintiff Tennessee Fine Wines that Tennessee's residency requirements for the issuance of a retailer license are discriminatory on their face.  In Cooper v. Texas Alcoholic Beverage Comm'n, 820 F.3d 730 (5th Cir. 2016), cert. denied sub nom. Texas Package Stores Ass'n, Inc. v. Fine Wine & Spirits of N. Texas, LLC, 137 S. Ct. 494 (2016), the Fifth Circuit denied relief from a permanent

---

[4] However, the Eighth Circuit still considered the interests of Missouri, albeit deferentially.  See Southern Wine, 731 F.3d at 810-11 ("If, despite the 'protected' status promised by Granholm, state policies defining the three-tier system are subject to deferential scrutiny, Missouri's law passes muster.").

injunction entered in Wilson v. McBeath, No. CIV. A-90-CA-736, 1991 WL 540043, at *3 (W.D. Tex. June 13, 1991), aff'd sub nom. Cooper v. McBeath, 11 F.3d 547 (5th Cir. 1994), which prevented the enforcement of the Texas Alcoholic Beverage Code's residency requirement necessary to receiving a mixed beverage permit. In Cooper v. McBeath, the Fifth Circuit characterized the residency requirement as an "impenetrable barrier to entering the Texas liquor industry on substantially equal terms as Texans enjoy [which] discriminates against out-of-staters." 11 F.3d at 553.

This Court finds persuasive and adopts the reasoning of the Fifth Circuit in Cooper v. Texas Alcoholic Beverage Comm'n. In that case, the Fifth Circuit affirmed the reading of Granholm it adopted in Wine Country Gift Baskets.com v. Steen, 612 F.3d 809, 821 (5th Cir. 2010); that is, Granholm reaffirmed the Commerce Clause limits state alcohol regulations—to a greater extent when the regulations deal with the producer tier and to a lesser extent when they deal with the retailer or wholesaler tier. See Texas Alcoholic Beverage Comm'n, 820 F.3d at 743. This Court agrees with the Fifth Circuit that "state regulations of the retailer and wholesaler tiers are not immune from Commerce Clause scrutiny just because they do not discriminate against out-of-state liquor." Id.

Although the Granholm Court stated that "[s]tate policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent[,]" 544 U.S. at 489, it is unnecessary to infer from that language that the Commerce Clause does not apply to all state regulations concerning the retailer and wholesaler tiers. This is because Granholm concerned a regulation that affected the producer-tier of the three-tier distribution system, so it makes sense that the Granholm Court discussed the protections of the Twenty-first Amendment in relation to liquor producers and products. Furthermore, Granholm

11

affirmed Commerce Clause principles that apply to the treatment of people and things beyond liquor producers and products. See Granholm, 544 U.S. at 472 (quoting Oregon Waste, 511 U.S. at 99) ("Time and again this Court has held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state *economic interests* that benefits the former and burdens the latter.'") (emphasis added). That Granholm affirmed the legitimacy of the three-tier system does not imply that a regulation, such as the retailer residency requirements at issue, is immune from Commerce Clause challenge.[5]

Granholm thus understood, this Court finds the residency requirements discriminatory on their face. The Court agrees that "[t]he Twenty-first Amendment does not . . . authorize states to impose a durational-residency requirement on the *owners* of alcoholic beverage retailers and wholesalers." Texas Alcoholic Beverage Comm'n, 820 F.3d at 743 (emphasis in original) (citing Wine Country, 612 F.3d at 821) (noting the difference between a permissible physical-residency

---

[5] This Court disagrees with Defendant Association's argument that Plaintiff Tennessee Fine Wines "pay[s] no heed to the Court's established distinction between laws that discriminate against out-of-state producers and their products versus laws that regulate the liquor distribution system within the State after those products have arrived." (Docket No. 90 at 9). Defendant Association summarizes the Supreme Court's dormant Commerce Clause and Twenty-first Amendment jurisprudence, but none of it requires a different outcome than the one this Court reaches, especially when the Granholm majority discussed many of the cases Defendant Association points out and still concludes that the Commerce Clause's nondiscrimination principle limits state regulation of alcohol. Defendant Association casts doubt, by highlighting portions from the Granholm dissent, on what it calls "the [Granholm] majority's exception of producers from the effect of the Twenty-first amendment," which "exception," it argues, does not help Plaintiff Tennessee Fine Wines for reasons already discussed. (Docket No. 90 at 13). The Granholm dissent asserted that the Granholm majority conceded that schemes, such as private licensing schemes requiring in-state residency or physical presence, are "within the ambit of the Twenty-first Amendment." Granholm, 544 U.S. at 518 (Thomas, J., dissenting). The dissent further stated that "allowing a State to require all wholesalers and retailers to be in-state companies is a core concern of the Twenty-first Amendment." Id. at 524 (Thomas, J., dissenting). However, the Granholm dissent seems to have overstated what the majority conceded. Affirming that a state can require liquor to pass through an in-state wholesaler, as the Granholm majority did in dicta, is different from explicitly holding that the Twenty-first Amendment protects in-state durational residency requirements. Furthermore, as will be discussed, this Court finds there is a difference between an *in-state physical presence* requirement and a *durational residency* requirement, such as the residency requirements at issue here.

requirement on retailers and wholesalers and an impermissible durational-residency requirement on the owners of retailers and wholesalers).[6] "Distinctions between in-state and out-of-state retailers and wholesalers are permissible only if they are an inherent aspect of the three-tier system." Id. (citing Wine Country, 612 F.3d at 818). Although requiring liquor stores to be physically present in Tennessee may serve its interest in regulating alcohol, the Court fails to see how imposing a durational residency requirement serves the same. Therefore, the Court finds that durational-residency requirements, such as those at issue here, are not inherent to a legitimate three-tier system.

The two-year (for an initial retailer license) and ten-year (for a renewal retailer license) residency requirements applicable to both individuals and corporations are discriminatory because they discriminate against out-of-staters by creating a barrier to entering the Tennessee retail liquor market. It is unavailing for Plaintiff Byrd to argue that the residency requirements apply even-handedly to every retailer seeking a license, whether in state or out, and that "applicants who are already Tennessee residents may not meet the two-year requirement along with their out-of-state counterparts." (Docket No. 73 at 10). Even though the latter may be factually true, that argument is unconvincing because it is still the case that a barrier is created for out-of-staters; pursuant to the residency requirements, nonresidents of Tennessee will always be unable to obtain a retail liquor license, but Tennessee residents of a certain duration may obtain one. Thus, the residency requirements "impermissibly favor Tennessee interests at the expense of interstate commerce." Jelovsek, 545 F.3d at 433; see also Granholm, 544 U.S. at 473 (stating that laws violate Commerce Clause principles when "[t]hey deprive citizens of their right to have access to the markets of other States on equal terms").

---

[6] This Court disagrees with Defendant Association's contention that these Fifth Circuit decisions "actually reveal inconsistency by the Fifth Circuit in attempting to follow Granholm." (Docket No. 90 at 16).

Furthermore, Plaintiff Byrd's and Defendant Association's attempt to distinguish the Sixth Circuit's decision in Jelovsek from the facts of this case is not helpful to their position. Plaintiff Byrd and Defendant Association argue that the residency requirement found discriminatory in Jelovsek applied to wine producers, and, therefore, "discriminated against out-of-state wine producers in ways that gave Tennessee wineries a competitive advantage" and "implicated interstate commerce." (Docket No. 73 at 11; Docket No. 90 at 16). Plaintiff Byrd contends that, unlike the residency requirements in Jelovsek, the retailer residency requirements at issue do not give in-state producers or products a competitive advantage. (Docket No. 73 at 11). Plaintiff Byrd argues that the residency requirements are protected by the three-tier system and "are firmly rooted in the regulation of who may be a retailer to sell products within Tennessee, regardless of whether the source of the liquor is in-state or out-of-state." (Id. at 12). He further contends that "[t]he residency requirement does nothing to inhibit the free flow of out-of-state liquor to those who meet the requirements of licensed wholesalers and retailers, who are free to sell both in-state and out-of-state liquor products directly to the general public." (Id. at 10-11).

It is clear that Plaintiff Byrd and Defendant Association base their arguments on a reading of Granholm that, per the discussion above, this Court rejects. Additionally, nothing in Jelovsek suggests that the Sixth Circuit interprets Granholm to mean that a statutory provision dealing with the retailer-tier is automatically protected from Commerce Clause challenge as long as it does not discriminate against out-of-state liquor producers or products. Even though the Sixth Circuit in Jelovsek states that "Tennessee's decision to adhere to a three-tier distribution system is immune from direct challenge on Commerce Clause grounds[,]" 545 F.3d at 436

(citing Granholm, 544 U.S. at 489), it is not obvious that the Sixth Circuit would uphold a residency requirement affecting retailers on that basis.[7]

Furthermore, the Court disagrees with Plaintiff Byrd that the residency requirement for a winery license found to be discriminatory in Jelovsek "made exceptions to Tennessee's three-tier system, much like the Michigan and New York statutes invalidated in Granholm[.]" (Docket No. 73 at 11). A court could appropriately characterize the statutory provisions invalidated in Granholm as *exceptions* to the three-tier distribution system because in-state wineries were allowed to ship directly to consumers, avoiding going through the wholesaler and retailer tiers, while out-of-state wineries could not do the same. The discriminatory winery residency requirement at issue in Jelovsek was not such an exception. Therefore, it is unavailing for Plaintiff Byrd to try to distinguish the retailer residency requirements at issue here from the discriminatory winery residency requirement at issue in Jelovsek on the basis that the former is not an impermissible exception from the three-tier system while the latter was.

**B. The residency requirements do not advance a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives**

Having found the retailer residency requirements discriminatory, the Court now considers whether they survive Plaintiff Tennessee Fine Wines' dormant Commerce Clause challenge because they "advance[] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." Granholm, 544 U.S. at 489 (citation omitted). "The burden is on the State to show that the *discrimination* is demonstrably justified." Id. at 492 (internal quotation marks and citation omitted) (emphasis in original). This standard is exacting.

---

[7] Furthermore, the Sixth Circuit mentions Tennessee's three-tier distribution system in the context of affirming the district court's determination that Tennessee may ban entirely direct shipment of alcoholic beverages to consumers because the ban "applied equally to in-state and out-of-state wineries." Jelovsek, 545 F.3d at 436.

See id. at 492-93 ("The Court has upheld state regulations that discriminate against interstate commerce only after finding, based on concrete record evidence, that a State's nondiscriminatory alternatives will prove unworkable.").

The General Assembly stated its purposes for enacting the residency requirements as follows:

> It is the intent of the general assembly to distinguish between licenses authorized generally under this title and those specifically authorized under this section. Because licenses granted under this section include the retail sale of liquor, spirits and high alcohol content beer which contain a higher alcohol content than those contained in wine or beer, as defined in § 57-5-101(b), it is in the interest of this state to maintain a higher degree of oversight, control and accountability for individuals involved in the ownership, management and control of licensed retail premises. For these reasons, it is in the best interest of the health, safety and welfare of this state to require all licensees to be residents of this state as provided herein and the commission is authorized and instructed to prescribe such inspection, reporting and educational programs as it shall deem necessary or appropriate to ensure that the laws, rules and regulations governing such licensees are observed.

T.C.A. § 57-3-204(b)(4). Because Plaintiff Byrd argues that Tennessee's residency requirements are not subject to Commerce Clause challenge, he does not offer the Court any concrete evidence to show that the discrimination against out-of-state residents is demonstrably justified. Plaintiff Tennessee Fine Wines contends that the General Assembly's stated purposes do not suffice to save the residency requirements. This Court agrees.

Stating that "it is in the best interest of the health, safety, and welfare of [the] state" to impose retailer residency requirements does not prevent the residency requirements from violating the Commerce Clause. Tennessee's concern for its health, safety, and welfare is an appropriate reason for it to regulate alcohol in general and maintain a three-tiered distribution system. See North Dakota v. United States, 495 U.S. at 432 ("The two North Dakota regulations fall within the core of the State's power under the Twenty-first Amendment. In the interest of

promoting temperance, ensuring orderly market conditions, and raising revenue, the State has established a comprehensive system for the distribution of liquor within its borders."); Bacchus Imports, Ltd. v. Dias, 468 U.S. at 276 (stating that a clear concern of the Twenty-first Amendment is to "combat the perceived evils of an unrestricted traffic in liquor"). However, that concern does not explain Tennessee's restriction on out-of-staters seeking a retail liquor license. Moreover, even if the retailer residency requirements advance the health, safety, and welfare of Tennessee, there has been no attempt to show that nondiscriminatory means would fail to accomplish Tennessee's purposes. See Anheuser-Busch, Inc. v. Schnorf, 738 F. Supp. 2d 793, 810–11 (N.D. Ill. 2010) ("Although Defendants have come forward with acceptable reasons why alcohol regulations in general and the three-tier system are valid . . . , none of those reasons justifies the discrimination . . . .").

Likewise, aiming "to maintain a higher degree of oversight, control, and accountability" of liquor retailers because products sold through them contain a high alcohol content does not stop the retailer residency requirements from running afoul of the Commerce Clause. The Supreme Court in Granholm rejected greater regulatory control as a sufficient justification when reasonable nondiscriminatory alternatives could serve that purpose. There, because the states provided little supporting evidence, the Supreme Court rejected the argument that the discriminatory statutes at issue aided them "to police underage drinking." Granholm, 544 U.S. at 490 ("Without concrete evidence that direct shipping of wine is likely to increase alcohol consumption by minors, we are left with the States' unsupported assertions."). Furthermore, the Granholm Court rejected the argument that allowing in-state producers, but forbidding out-of-state producers, to ship wine directly to consumers was justified because the states "ha[d] greater regulatory control over in-state producers than over out-of-state wineries." Id. The Court noted

17

that alternative means existed. See id. at 490-91 ("[T]he States can take less restrictive steps to minimize the risk that minors will order wine by mail.").

Here, this Court fails to see how the retailer residency requirements even assist Tennessee to achieve a higher degree of oversight, control, and accountability over those involved in the ownership, management, and control of licensed retail premises. The Court has no evidence before it to allow it to infer that a prospective applicant for a retail package store license is subject to alcohol regulations during the two-year in-state residency period currently required for retailer license eligibility. Therefore, the Court cannot find that the retailer residency requirements help Tennessee to achieve greater oversight, control, and accountability. And as Granholm noted, "improvements in technology have eased the burden of monitoring out-of-state wineries. Background checks can be done electronically. Financial records and sales data can be mailed, faxed, or submitted via e-mail." Id. at 492. This applies equally to out-of-staters seeking a retail liquor license in Tennessee.

Because there has been no showing that the residency requirements advance a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives, the Court finds that the residency requirements do not survive a Commerce Clause challenge.

## II. Privileges and Immunities

Given that the Court disposes of this case on Commerce Clause grounds, the Court declines to rule on whether the residency requirements also violate the Privileges and Immunities Clause of Art. IV, § 2 of the U.S. Constitution.

**CONCLUSION**

For the foregoing reasons, Plaintiff Tennessee Fine Wines' Motion for Partial Summary Judgment, (Docket No. 55), will be granted. The Court declares the residency requirements unconstitutional under the dormant Commerce Clause and enjoins their enforcement.

An appropriate order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE